IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-14135-CIV-MOORE/SIMONTON

MINA ZOHER,

    Plaintiff,

v.

CHASE HOME FINANCING,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss (ECF No. 11). A Response (ECF No. 23) and Reply (ECF No. 24) were also filed.

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.[1]

## I.   BACKGROUND

Plaintiff Mina Zoher ("Zoher") brings a claim against Defendant Chase Home Financing ("Chase") under the Home Affordable Modification Program ("HAMP") for Chase's failure to refinance her mortgage loan.[2] HAMP is a program created by the Department of Treasury and the Federal Housing Finance Agency, which offers financial incentives to mortgage lenders who modify the home loans of borrowers in danger of foreclosure. Mortgage lenders or servicers enter "servicer participation agreements" with the government agreeing to abide by a set of

---

[1] Defendant also asserts a Statute of Frauds defense under Fla. Stat. § 687.034(2). This Order only addresses Part II.B of Defendant's Motion, relating to Home Affordable Modification Program claims.

[2] Relevant facts are taken from Plaintiff's Complaint (ECF No. 1).

guidelines in evaluating applications for home mortgage modification. On November 12, 2009, Zoher applied for a loan modification on her home mortgage. In a letter to Zoher, dated May 6, 2010, Chase denied the application. Plaintiff avers that because Chase is a beneficiary of HAMP and because she complied with HAMP guidelines, Chase is contractually obligated to refinance her loan. Zoher seeks an injunction ordering Chase to modify her loan, as well as actual and punitive damages.

## II.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'shown'--'that the pleader is entitled to relief.'" Id. at 1950. A complaint must also contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 355 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of

fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

### III. ANALYSIS

Zoher claims that Chase, as a participant in HAMP, was required to modify her mortgage loan. She alleges that because Chase was a fund recipient in the program, there was a "certain implication on the defendant's obligations in conducting business[.]" Compl. ¶ 3. As Zoher is a pro se plaintiff, this Court will construe Zoher's Complaint liberally. Though not entirely clear, because she asks for an injunction forcing a loan modification in addition to damages, this Court interprets Zoher's Complaint as an attempt to state a claim under HAMP itself.

#### A. HAMP

During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 ("EESA"), to "immediately provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States[.]" 12 U.S.C. § 5201 et seq. The statute directed the Secretary to implement a plan to minimize foreclosures. Id. § 5220. To that end, the Department of Treasury, in conjunction with other government institutions, created the Making Home Affordable Program. HAMP is a component of this initiative.

HAMP works "by providing financial incentives of participating mortgage servicers [("servicers")] to modify the terms of the eligible loans." Marks v. Bank of Am., No: 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5 (D. Ariz. June 22, 2010). Mortgagors may apply to

3

servicers for modification of home loans if the mortgagor meets certain criteria.[3] When considering modifications, participating servicers are obliged to abide by guidelines set forth by the Secretary of Treasury in the Home Affordable Modification Program Guidelines ("Guidelines"). U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009). To assure compliance with these Guidelines, the Secretary designated Freddie Mac to be a compliance officer. Marks, 2010 WL 2572988, at *6. In that capacity, Freddie Mac independently evaluates data provided by the servicers to determine whether they are properly assessing borrower eligibility. Id.

Thus far, several borrowers who have not been granted modifications have unsuccessfully attempted to enforce compliance through civil actions. See e.g., Marks, 2010 WL 2572988; Robinson v. Wells Fargo, No. 09-2066-PHX-JAT, 2010 WL 2534192 (D. Ariz. June 18, 2010); Aleem v. Bank of Am., No. 09-0182, 2010 WL 532330 (C.D. Cal. Feb. 9, 2010); Escobedo v. Countrywide Home Loans, No. 09-cv-1557, 2009 WL 4981618 (S.D. Cal. Mar. 15, 2010). Plaintiffs in previous cases have brought these claims under two theories. First, claims have been brought alleging that HAMP allows a private right of action for modification of the contract between the plaintiff mortgagor and the defendant mortgagee. Second, some plaintiffs claim that a contract between the mortgage servicer and the government requires loan remodification and therefore, they have rights as third-party beneficiaries of that contract. This Court will address Zoher's claim under each of these theories.

---

[3] Criteria considered when determining eligibility for a modification include, inter alia, the origination date of the loan, the unpaid principal balance, and whether the property in question is a primary residence. See U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009).

B.     No Private Right of Action

Chase maintains that the Complaint warrants dismissal because HAMP does not provide a private cause of action under which borrowers may sue servicers. Def.'s Mot. to Dismiss (ECF No. 23), at 3. This contention is correct--HAMP does not expressly create a cause of action.[4] Marks, 2010 WL 257988, at *5-*6. "Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide for a private right of action. Rather, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac." Id. at *6. The lack of any express authorization, in addition to the exclusive compliance authority delegated to Freddie Mac, demonstrates that Congress did not intend to create a private cause of action. Id.

Second, there is no implied right of action under HAMP. Id. In determining whether there is an implied right of action under a statute, courts apply a four-factor test. Id. The court must consider:

> (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted–that is [whether] the statute create[s] a federal right in favor of the plaintiff; (2) whether there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether the cause of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to confer a cause of action based solely on federal law.

---

[4] In Zoher's Response, Plaintiff points to Huxtable v. Geithner, No. 09cv1846 BTM, 2009 WL 5199333 (S.D. Cal. Dec. 23, 2009), as a case that allowed a private cause of action under HAMP to proceed. In Huxtable, Plaintiffs claimed that lender's failure "to create rules implementing HAMP" violated procedural due process rights under the Fifth Amendment. Id. at *1. The court allowed the claim to go forward because it "did not have sufficient facts to determine whether [the private lender engaged in] state action" with the government. Id. at *3. This case is inapposite because Zoher did not bring a claim under the Fifth Amendment Due Process Clause.

5

Id. (quoting Cort v. Ash. 422 U.S. 66 (1975) (internal quotation marks omitted)).

When these factors are applied to EESA, it is clear that no implied right of action exists. First, EESA was not passed for the "especial benefit" of homeowners at risk of foreclosure; rather, the statute was designed to "address[] [] large-scale economic phenomena affecting not only homeowners, but also financial institutions and homeowners at large." Id. While distressed mortgagors may benefit from the statute, it is not for their "especial benefit." Instead, it is intended to assist homeowners and financial institutions in general. Furthermore, the Guidelines allegedly being violated are not a statute and were not promulgated for the benefit of mortgagors, but rather as a way to set forth policies and procedures for participating mortgage servicers.

Second, there was no legislative intent to create a cause of action. Id. The EESA merely authorizes the Secretary of Treasury to implement plans as part of an overall effort to mitigate foreclosures. 12 U.S.C. § 5220. It does not create an enforceable right to a loan modification that may be remedied by judicial proceedings. Allowing a private cause of action would also directly contravene legislative intent as the "legislative history [of the statute] indicates that the right to initiate a cause of action lies with the Secretary via the Administrative Procedure Act." Marks, 2010 WL 2572988, at *7.

Recognizing an implied private cause of action would also not serve the legislative scheme. The purpose of the program is to delay or avoid foreclosures by offering incentives to servicers to modify home loans. Finding an implied private right of action for mortgagors would discourage servicers from participating in the program because they would be exposed to

significant litigation expenses.  Moreover, by creating a compliance vehicle through Freddie Mac and by including reporting requirements, "the HAMP Guidelines already designated a scheme to correct [] any mortgagee wrongdoing."[5] Id.

Finally, controversies involving real property and contract claims are "generally relegated to state law." Id.; see also Roberts v. Cameron-Brown Co., 556 F. 2d 356, 361-62 (5th Cir. 1977) ("[M]ortgage foreclosure has traditionally been a matter for state courts and state law.") "Because the HAMP is the *administrative* program to accomplish the EESA's goals, a private right of action is clearly precluded." Id. (emphasis in original).  Thus, a claim to an implied private right of action under HAMP does not satisfy any of the applicable four factors.  Therefore, no private right of action exists and Zoher's claim may not proceed on this basis.

C.    Third-Party Beneficiary Claims

To the extent that Zoher claims to be a third-party beneficiary of a contract between servicers and the government, Zoher's argument also fails.  Borrowers may not attempt to enforce HAMP compliance as third-party beneficiaries of a contract.  Hoffman v. Bank of Am., No. C 10-2171, 2010 WL 2635773, at *3 (N.D. Cal. 2010).  To recover on a contract claim, a third party "must be able to show that the contract was made with the 'express or implied intention of the parties to the contract to benefit the third party.'" Id. at *3 (quoting Klamath v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999); see also Caretta Trucking v. Cheoy Lee

---

[5] In the event of a default or "Act of Bad Faith," the Servicer Participation Agreement includes several remedies that Fannie Mae, acting as a financial agent of the United States, can also take to ensure compliance by the servicers–including reducing payments and terminating the agreement.  HAMP Servicer Participation Agreement, available at https://www.hmpadmin.com/portal/programs/hamp.html.

Shipyards, 647 So. 2d 1028, 1031 (Fla. Dist. Ct. App. 1994) ("A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong."). Such an intention would make the claimant an intended third-party beneficiary who may sue to enforce or recover on the contract, as opposed to an incidental beneficiary who has no such rights. Hoffman, 2010 WL 2635773, at *3; see also Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 279 (Fla. 1985) ("It is axiomatic in contract law that an incidental beneficiary cannot enforce the contract."). "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." Klamath, 204 F.3d at 1211 (citing Restatement (Second) of Contracts § 302(1)(b) cmt. d). A mortgagor would not be reasonable in relying upon a "servicer participation agreement" between servicers and the Department of Treasury because the servicer participation agreement does not require that servicers modify any loan that fits the criteria, it merely requires the servicers consider them. Escobedo, 2009 WL 4981618, at *3. Thus, it would be unreasonable for a borrower to interpret the agreement as one that "confer[s] a right" to a loan modification on him or her. Id.

Moreover, in general, government contracts that benefit members of the public are assumed to create incidental beneficiaries "absent a clear intent to the contrary." Marks, 2010 WL 2572988, at *3; see also Roberts, 556 F. 2d at 361-62 (finding that a mortgagor was "at most" an incidental third party beneficiary of a program in which the Department of Housing and Urban Development (HUD) provided mortgagees with mortgage assistance payments to encourage them to invest in low-income housing, and mortgagees violated provision in HUD

8

program handbook); see generally Restatement (Second) of Contracts § 313 cmt. a (stating that "governmental contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested"). The servicer participation agreements have no language indicating that mortgagors should be viewed as intended beneficiaries able to enforce the contract.

Zoher cannot enforce the agreement between Defendant Chase and the government and there is no private right of action under HAMP. Accordingly, Zoher has not stated a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons stated above, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (ECF No. 11) is GRANTED. This case is DISMISSED. All pending motions are DENIED AS MOOT. The Clerk of the Court is instructed to CLOSE this case.

DONE AND ORDERED in Chambers at Miami, Florida, this /4th day of October, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record